GIBSON v. STANDARD AUTOMATIC GAS ENGINE CO. et al.

(Circuit Court of Appeals, Third Circuit. January 18, 1905.)

No. 35.

RECEIVERS—APPOINTMENT ON CONDITIONAL WAIVER OF CLAIMS BY CREDITORS—ENFORCEMENT OF STIPULATION.

A receiver was appointed for the property of a corporation on a bill filed by a stockholder and creditor, and an impending sale by a sheriff of certain of its property enjoined, expressly in consideration of a stipulation made by complainant and certain other creditors that if the total amount realized by such receivership on the assets of the company, and applicable to the payment of its debts, should not exceed a sum which had been offered for the property by an execution creditor, the stipulators would waive any claims they held against the company, either as creditors or stockholders. The order directed the receiver to advertise and sell the property, and it was sold for less than the sum named in the stipulation, and the sale confirmed, all without objection by the stipulators. *Held*, that the court was justified, on distribution of the proceeds, in holding the stipulators bound by their stipulation and in excluding their claims.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Receivers, §§ 68, 69; vol. 44, Cent. Dig. Stipulations, §§ 41, 52, 53.]

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

A. O. Fording and E. C. Breene, for appellant.

P. M. Speer, for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. This suit was begun by bill of complaint filed by the appellant February 25, 1904, against the persons and corporations who are appellees here. On March 3, 1904, a substituted or amended bill was filed. It is not necessary to recite the contents of either of these bills. The latter prayed the court, among other things:

"(4) To appoint a receiver or receivers to take suitable charge of all the property, assets, and business of the said company [the Standard Automatic Gas Engine Company], and to hold the same under the orders and directions of your honorable court; to continue the said business pending the determination of the issues which may be made in the present suit, and to collect, according to law, for the benefit of the said corporation, creditors, and stockholders, all accounts and moneys justly due the said company by the said John B. Smithman and other debtors thereof.

"(5) To enjoin the defendants and each of them, except the Standard Automatic Gas Engine Company, from causing any of the property of the defendant company to be sold under the writs of fieri facias now in the hands of the sheriff of Venango county, or to proceed further under said writs, but, until such injunction may properly be made under the practice of your honorable court, to grant a restraining order with the same effect for the time being."

Immediately upon the exhibition of the first bill, and upon the ex parte application of the complainant, a restraining order was granted and issued, of which the following is a copy:

"To John B. Smithman, J. W. Raymond, Leander Milton, William E. Blaney, J. P. Strayer, George G. Snowden, John Walker, administrator of the estate of John T. Sharp, deceased, A. F. Smithman, the Oil City National

Bank, a corporation, and Frederick T. McCollum, sheriff of Venango county, greeting: You and each of you will take notice that on the 25th day of February, 1902, on motion of Robert D. Gibson's solicitor in his suit against the Standard Automatic Gas Engine Company and yourselves, and on presentation of his bill of complaint to the Circuit Court of the United States for the Western District of Pennsylvania, at the city of Pittsburg, the said court has set the hearing of his motion for the allowance of an injunction as prayed for in his bill, and of his application for the appointment of a receiver as prayed for in his said bill, for Thursday, the 27th day of February, 1902, at ·2 o'clock p. m., and that it was at the same time ordered by the said court that, pending such hearing, you and each of you be restrained from causing any property of the Standard Automatic Gas Engine Company to be sold under certain writs of fieri facias issued from the court of common pleas of Venango county to the sheriff of the said county on the 13th day of February, 1902, and from proceedings further under said writs or any of them."

On February 27, 1902, on motion of the complainant, the hearing ·of his application for the appointment of a receiver was postponed until . March 6, 1903; and the restraining order was continued in force until ·such hearing should be had, notwithstanding an offer then made by the defendant John B. Smithman, whom, among others, that order had restrained "from causing any property of the Standard Automatic Gas Engine Company to be sold under certain writs of fieri facias issued from the court of common pleas of Venango county," which offer was ·as follows:

"Pittsburg, Pa., Feb. 27, 1902.

"I hereby offer as of this date and agree to pay for the property, franchises, ·drawings, patents, materials of every kind, and all assets of the Standard Automatic Gas Engine Company, including realty, the sum of fifty-seven thousand dollars, being approximately the amount of the just debts of the company. This offer not to be held binding if the sale now fixed" [under the writs of fieri facias] "for Saturday, the first day of March next, should be postponed ·by reason of any order of this court.                     Jno. B. Smithman.

"Or I will hereby offer of this date and date of adjournment of said sale, ·to wit, March first next, the sum of forty-eight thousand dollars for the ·property levied upon.                     Jno. B. Smithman."

On the day to which the application for the appointment of a re-·ceiver had been postponed the following stipulation was filed:

"Now, March 6th, 1902, comes the plaintiff, Robert D. Gibson, who is applying to the said court in the above action for the appointment of a re-·ceiver of the property and assets of the defendant company; and also comes ·defendant J. W. Raymond, who is joining in the said application; and also comes George G. Snowden, one of the said defendants; and said Gibson, Raymond, and Snowden do hereby stipulate and agree that if a receiver be . appointed as prayed for, and if the total amount of money realized by such receivership on the assets of the said company, and applicable to the payment ·of debts of the company now existing, shall not exceed fifty-seven thousand ·(57,000) dollars, then said Gibson, Raymond, and Snowden will waive, and in that event do hereby waive, any and all claims of R. D. Gibson, R. D. Gibson, trustee, J. W. Raymond, and George G. Snowden against the assets of ·the said company, whether as creditors or as stockholders.

"J. W. Raymond.
"Geo. G. Snowden.
"R. D. Gibson."

"On the strength" of this stipulation, and though "the court was of ·the opinion that no case for a receiver was made out, but at the earnest ·request of" the stipulators, "and upon their representation that a sale by ·a receiver would prevent a sacrifice of the property, and that it would ·likely sell for a sum much in excess of $57,000" (which Mr. Smithman,

as has been seen, had offered to pay for it), "the court finally appointed a receiver to give them that opportunity, but as a condition of such appointment required them to file the stipulation referred to." The language just quoted is taken from the opinion which was delivered by the learned judge below in support of the orders appealed from, and the antecedent decree to which it refers was in these terms:

"And now, to wit, March 8, 1902, this matter came on to be heard upon the motion for the appointment of a receiver, and thereupon, after hearing the bill, answer, affidavits, and arguments of counsel, the motion for the appointment of a receiver is hereby granted, as follows:

"First. John F. Mattox is hereby appointed receiver of all the property of every kind and description of the said the Standard Automatic Gas Engine Co., wherever the same may be, with all the powers, rights, and duties of receivers in like cases, and particularly with rights, powers, and duties herein especially set forth.

"Second. The officers and agents of said defendant company, and all other persons having possession of any property of said company, shall forthwith assign, transfer, and deliver to the said receiver all the property, accounts, bills, and accounts receivable, assets, books, vouchers, letters patent, and other papers and property belonging to the said defendant company, including applications for pending patents. The said receiver shall forthwith enter into possession of said property and keep and hold the same subject to the further order of this court, with power to take such steps as shall be necessary for the preservation of the property. He shall forthwith cause an inventory or list of all the property and effects of said company, including patents and property situate at the works and elsewhere, to be made; and H. D. Brown and J. W. Raymond are hereby appointed to make such inventory, it being agreed by Mr. Raymond's counsel that his services shall be gratuitous. All the creditors of the said company, their agents, attorneys, and all other persons whomsoever, claiming to be creditors of the said company, are hereby enjoined and restrained from interfering with the property or affairs of said company by suit, attachment, execution, or other process, in law or equity, without the order or direction of this court. The receiver is directed to give bond in the sum of $2,000.00, with surety to be approved by the court. It is ordered that all liens and rights of judgment and execution creditors, if any such exist, of, in, and to any property delivered to the receiver, be, and the same are hereby, preserved, subject to the determination of this court hereafter.

"It is further ordered that all the property and effects of said corporation of every kind and nature whatsoever, including franchises, real estate, machinery, fixtures, patents, applications for patents, tools, patterns, stock on hand, bills receivable, accounts receivable, and generally all and every kind and nature of property belonging to said corporation, whether real, personal, or mixed, and whether in possession or action, and wherever situate, and including the right of the company to any, all, and all outstanding contracts, be sold by said receiver upon Thursday, the 10th day of April, 1902, on the premises, in the borough of West End, Venango county, Pennsylvania; that the said receiver shall, in brief form, advertise the said property for sale once a week for four weeks preceding said sale, in some paper published in Oil City, and may make such other advertisement of the same in trade or other journals, if it seems proper to him to do so. The said property shall be sold upon the following terms: One-fourth of the purchase money to be paid to the receiver on the property being knocked down, the balance to be paid in cash at the time the sale is confirmed. Possession of the works to be given when sale is confirmed.

"The receiver shall have power to adjourn the sale for not more than two days from said date of sale without further order of the court. He shall make return of said sale to the court on Tuesday, the 15th day of April, 1902, at 2 o'clock p. m., at which time the court may, if it see fit, approve said sale absolutely and without further notice, and order a deed and proper conveyances to be forthwith made.

"And it is further ordered that purchasers at said sale shall have the right, within thirty days after the confirmation and delivery of the deed herein provided for, to determine what, if any, of the outstanding contracts and agreements of said company so sold the purchaser will assume or adopt. It is further ordered that the real estate so sold be sold and conveyed free and divested of all liens."

In pursuance of authority given by this decree, the receiver, on April 10, 1902, sold the property to which it related at public sale "to John B. Smithman, for the sum of $45,000, that being the highest and best price bidden for the same." A return of this sale was made, and thereupon, "and no objection being made to the confirmation of such sale," it was on April 15, 1902, duly confirmed. On the following day, viz., April 16, 1902, the court, by "order made by consent of all parties," appointed a master "to distribute the fund raised by such receiver's sale, * * * subject to the ultimate judgment of the court upon exceptions, if any, as to law or fact, to said master's report." In the course of the proceedings in the master's office claims of considerable amount were presented by the three persons, including this appellant, who had executed the stipulation of March 6, 1902, and with relation thereto they exhibited a petition to the master, which, at their request, he certified to the court, and the learned judge thereupon entered an order as follows:

"And now, April 22, 1903, the petition of R. D. Gibson, J. W. Raymond, and George G. Snowden, and the objections thereto, came on to be heard upon the certificate of C. W. Hays, the master appointed by this court to distribute the funds in the hands of the receiver; and upon hearing and consideration of said petition, and arguments of counsel thereon, it is ordered, adjudged, and decreed that the stipulation of said R. D. Gibson, J. W. Raymond, and George G. Snowden, filed in this court on the 6th day of March, 1902, was and is a valid stipulation, binding upon the parties thereto, and the objection on behalf of the defendant company, and on behalf of execution creditors to the proof of claims upon the fund for distribution by said parties to said stipulation, is sustained, and the master is directed to proceed accordingly."

The matter adjudicated by this order again came before the court upon exceptions of R. D. Gibson et al. to the master's report. Upon October 6, 1903, these exceptions were dismissed, and the report confirmed, in an opinion to which reference has been already made; and the only question raised by the assignment of errors is, whether the court below erred in its ruling that the stipulation of March 6, 1902, was binding upon the parties thereto, and precluded them from asserting any claim upon the proceeds of the receiver's sale.

When the receiver was appointed Smithman's offer to purchase the property of the Standard Company for $57,000, or such portion of it as had been levied upon for $48,000, had been rejected; and the then existent situation, whether rightly created or not, had been produced at the instance of the plaintiff himself, and he it was who urged the court to constitute the receivership. Neither did he object to the sale that was made, nor to the reference to a master which ensued. Consequently he is not in a position to complain, and in fact does not complain, of anything that was done, except the disallowance of his claim to participate in the distribution of the fund which, by his procurement, the court had brought into

existence, and which, therefore, it was incumbent upon it to see should be equitably appropriated. In discharging this duty the learned judge was confronted by the stipulation in question. He, of course, knew the effect which the court had given to it, and his opinion informs us that by it alone he was prevailed upon to comply with the earnest request of the appellant that a receiver should be appointed. Why, then, should he not be bound by it? He was not entitled to demand, as matter of right, the order for which he asked, and the court in yielding, as matter of grace, to his importunity, certainly was warranted in assuming that the agreement which induced it to do so could not, after its object had been attained, be repudiated. The stipulation was "a condition of such appointment," and the provision of the decree by which it was made, that all the property of the corporation should be sold, must have been known to the appellant. Therefore we cannot sustain his contention that his agreement was to be operative only in case a receiver to continue the business of the corporation, and not to sell its assets, should be appointed. The learned judge of the court below, to whom the circumstances under which that agreement was tendered and accepted were fully known, did not so understand the matter, and we see no reason to suppose that he was mistaken about it. The stipulation was filed, and thereupon the decree was made; and if the stipulators really believed that its direction to the receiver to sell absolved them from their undertaking, they should then have said so. But, instead of doing this, they allowed the decree to be entered, and the stipulation to remain on file, without ever suggesting that it was not obligatory until the time arrived for enforcing it. Its language was their language. It was chosen by them, and if ambiguous should not be construed most favorably to them. But, when fairly read in the light of the surrounding circumstances, the meaning of the paper seems to us to be plain. It referred, it is true, to a receiver to be appointed "as prayed for"; but we cannot agree that because the appointment which was actually made was coupled with an order to sell, instead of to operate, as had been proposed by the prayer of the bill, that therefore the appointment itself, which, as made, was acquiesced in by the appellant, was not the appointment prayed for. As we have said, it seems never to have occurred to any one that it was not until this controversy arose; and that a sale by the receiver was contemplated by the parties to the stipulation is indicated by its waiver of their claims, "if the total amount of money realized by such receivership on the assets of the said company, and applicable to payment of debts of the company now existing, shall not exceed $57,000"; for it could not have been supposed that, during any admissible period of receivership, a sum exceeding that amount could be realized from its assets otherwise than by selling them. The fact is, we are convinced, that when the stipulation was filed and the decree entered, the only question in the mind of the court, or of any of the parties, was not as to whether a sale should be made, but whether a sale, which was inevitable, should be made by the sheriff, or by a receiver; and the learned judge himself has said that he was persuaded to interdict

the impending sheriff's sale solely by the representation of the appellant and his associates that "a sale by a receiver would prevent a sacrifice of the property."

Upon the grounds we have stated, we concur in the opinion of the court below that good faith requires that the appellant should be held to his stipulation, and therefore the orders of that court, which the appellant has averred to be erroneous, are affirmed.